Harold A. Stevens, J.
Plaintiff brings action to recover damages for an alleged breach of contract, and seeks also the return of certain moneys paid by it to the defendant.
On April 6, 1953, by written agreement, plaintiff was given the right to exhibit and sublicense for exhibition in Brazil 23 motion pictures, for which it agreed to and did pay the sum of $23,000 royalties at a fixed rate of exchange agreed upon between the parties. The agreement was to run for 5 years, and plaintiff was given the right to order additional prints in 16 or 35 rnm. of any or all the said pictures with a provision for payment therefor. Payment of the $23,000 was made in instalments extending to June 30, 1954.
*849 At the time the contract was made plaintiff was already in possession of 12 of the pictures. Later it ordered and received the picture “ Thief of Bagdad.”
On November 8, 1954 plaintiff ordered certain pictures in 16 mm., of which 10 pictures were to be in black and white and 6 were ordered in technicolor. On November 25, 1954 prices were quoted by defendant for four of the technicolor pictures, which plaintiff found “ very high ” by letter of December 4, 1954. Certain of the other pictures ordered could not be supplied at all. Two of the pictures could be supplied in both 16 mm. and 35 mm. By letter dated December 20, 1954 plaintiff notified defendant that it would be held responsible for its failure to supply the pictures and prints. Subsequently this action was brought.
Plaintiff in its first cause of action seeks to recover $22,000, allowing $1,000 for its receipt of “ Thief of Bagdad.” In plaintiff’s second cause of action plaintiff seeks $250,000 damages for the alleged breach of contract.
Defendant’s answer denies any breach, pleads that this defendant was only an agent for a disclosed principal, that plaintiff itself had breached the agreement in several specified particulars, and set forth other defenses to which we shall refer.
Basically, the plaintiff claims the contract is indivisible, while the defendant claims it is divisible.
Addressing ourselves first to that phase — we are of the opinion, and so find, that the contract is clearly divisible. By the language of the instrument itself plaintiff was given (1) the right or license to exhibit certain motion pictures for a fixed period upon the making of certain payments. (2) It had the right if it wished, and did so order, to be supplied with prints of certain named pictures if available. There was no obligation on plaintiff to order additional prints of any or all of the pictures. Plaintiff did in fact order in February, 1954 one picture which was supplied. In November, 1954 plaintiff ordered certain other pictures, not the entire 23, or even 22, but a lesser number. Payments were to be made for prints of each picture, as ordered.
Plaintiff claims that by reason of defendant’s failure to supply all of the pictures listed in the order of November 8, 1954, the entire contract is at end and plaintiff, applying the doctrine of anticipatory breach, is entitled to damages for the remaining period of the contract which it estimated at $250,000.
It should be noted here that “ Jungle Book ” and “ Drums ” were offered plaintiff in both 16 and 35 mm. Since we have *850 found the contract divisible we exclude any claim for loss from those 2 films.
Twelve of the 23 pictures were actually in plaintiff’s possession and being used by plaintiff on April 6,1953 when the agreement was executed. It is agreed that the remaining 11 were never in plaintiff’s possession since there were 23 pictures involved, and royalty payments of $23,000 made, it seems that the rate was $1,000 each. As to the 11 pictures never available, since we determined the contract is divisible, the consideration for the performance of that part (i.e., the royalties), is recoverable by plaintiff as money had and received. We fix this sum at $9,200, in accordance with the sum actually paid in dollars.*
As to the remaining 12 pictures, “ Drums,” “ Thief of Bag-dad ” and “ Jungle Book ” are removed from our consideration because we find that they were available to the plaintiff.
Plaintiff seeks in one cause of action, in effect, to rescind the contract, though without offering to return that which it has, while in the other cause it seeks extensive damages.
We examined exhibits and listened to much testimony on the losses projected by reason of the alleged breach of the defendant. It may be that we are guilty of oversimplification, but it seems to us that plaintiff’s claim must be limited to damages, if any, flowing from a failure to supply 9 pictures.
It should be pointed out that plaintiff has used, exhibited before and after the alleged breach, some or all of the 12 pictures in its possession; that it has received revenue therefrom in 1955 and, in some instances, in 1956.
We find there was a contract between the parties, which, by its terms was divisible, and so regarded by the parties in their actions in connection therewith. We find this, in essence, was an option agreement. That under that portion of the contract designated “ License Conditions ” (§ 82) defendant was not ‘ ‘ under any obligation to deliver to the Licensee any picture unless the same shall have been or shall be available to the Licensor for distribution in the territory herein defined.” This contract being executory in part the repudiation by defendant must be entire, absolute and unequivocal, covering the entire performance to which the contract binds the promisor defendant, in order to constitute an anticipatory breach.
Plaintiff contends that the failure to supply the list of 16 mm. pictures ordered on November 8, 1954 rendered unnecessary and in fact futile any further orders from it. As to the pictures ordered there was a positive act, an exercise of the option. The *851 inability or failure of defendant to deliver constituted a breach to that extent. Plaintiff also claims it was unable to perform agreements made by it with other companies, and includes here a claim for losses allegedly sustained as a result.
Let us refer to the agreements briefly — The “ Fayal ” agreement, entered May 21, 1951, expired May 14, 1955. Plaintiff received certain advances and now claims it is obligated to return a portion of the same because of defendant’s failure to supply film. No claim has been made upon plaintiff for the return of the money, nor is any suit pending. Moreover there was ample time during the life of the agreement for plaintiff to meet all of its obligations under the agreement. There is no proof that the loss, if any, was caused by this defendant. The “ Empresa ” agreement involved other pictures not the subject of this suit in addition to some of the pictures named here and an arbitrary allocation of claimed loss, without additional proof, cannot fix responsibility upon this defendant. Nor did the “ Cadef ” agreement impose liability on this defendant. Plaintiff’s argument that had the defendant supplied it with the additional pictures, those pictures would have been given to “ Fayal” and the others, and the funds advanced worked off, is purely speculative. There is no, or at best an insufficient, showing that plaintiff ever ordered films prior to the alleged breach, for its benefit in connection with these agreements. In fact the plaintiff continued to exhibit certain films during the life of the Fayal agreement which expired in 1955. Plaintiff’s business records introduced in evidence failed to support its claim of loss, or even to identify, by entry, the receipt of the moneys claimed.
There is another agreement, dated November 23, 1954, between plaintiff and Mesbla Oorp. Plaintiff claims that by reason of defendant’s breach it could not make the contract as the parties desired, because it could not supply 16 additional pictures. It is to be noted that this contract is dated November 23, 1954, while plaintiff did not claim a breach by defendant until much later, in December, 1954. Moreover the contract in question is a contract to sublicense for subdistribution. Under the agreement between plaintiff and defendant, plaintiff was given the right to “ exhibit and sub-license for exhibition That language was plaintiff’s own, and must therefore be construed most strongly against plaintiff. Aside from this finding we are not satisfied that plaintiff produced sufficient competent proof to establish that had all of the pictures been available, the “ Mesbla ” agreement would, in fact, have included them.
*852 The defense of representing a disclosed principal and thereby disclaiming liability is without merit. So far as the record reveals these payments were made to the ultimate credit of this defendant.
We are of the opinion that the 9 pictures earlier referred to were certainly considered by both parties to be available at that time or upon future demand. There is some loss here to the defendant by reason of the unavailability of certain pictures. We excluded evidence of loss of projected income for the 11 pictures never possessed by plaintiff or ordered in 35 mm. for showing in theatres. While plaintiff itself need not have done business in the relevant market with these 11 pictures, yet it must have established some reasonable basis for claimed projected loss by receipts from these films of comparable competitors in the area, or even receipts, if any, by this defendant from the area from which it claims to have been wrongfully excluded by reason of defendant’s conduct.
Plaintiff offered proof of loss by projecting its claimed damages based upon past income of the remaining film. It claimed loss from November 8, 1954 to the end of the contract period. It continued, however, to show many of these pictures even into 1956. A study of the income derived from each picture after the initial exhibition and upon each subsequent showing, reveals a sharp decline in revenue. These are so-called flat pictures. Testimony at the trial indicated that since the entering of the contract, vista-vision, cinemascope and other more recent advancements have been introduced into Brazil and are being widely used. As such they are in direct competition. The plaintiff while claiming a profit in its operations produced no books or records to support its claim from 1951 or 1952, and afterwards.
Estimating the cost of the prints for which plaintiff was obligated to pay when it placed its orders, the public appeal of these types of pictures in competition with more recent innovations, the revenue actually received by plaintiff upon prior exhibitions together with the decline in such revenue upon repeated showings, and the fact that some of these pictures had been exhibited by plaintiff from 1949, even before this contract was executed, lead us to conclude that plaintiff has not suffered the very substantial damage it claims. Many of these pictures were shown in 1955-1956. As pointed out plaintiff had a right to continue to exhibit certain pictures, and there is no interference claimed as to that right. It claims that when it exercised its option to order the defendant did not or could not make delivery. Plaintiff also failed to comply with certain conditions of the agree- *853 meat and we hold that defendant’s notice of December, 1956 was effective and limited its liability.
Judgment for plaintiff in the total amount of $15,200.
(Amended Decision.)
The letter of the plaintiff is treated as an application to amend. Upon such application the decision in the above-entitled action is recalled and amended by adding the following words to page 850, line 12, ‘ ‘ with interest to be computed thereon from April 13, 1954.” Lines 12 and 13, as amended will read: “We fix this sum at $9,200 in accordance with the sum actually paid in dollars, with interest to be computed thereon from April 13, 1954.” As amended, the decision is republished without further change.

 See post, p. 853.